**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| MOTHER MILLER, as Parent and Natural Guardian of BILLY MILLER, and CHARLIE JONES, individually and on behalf of all others similarly situated, | : : : : : | CIVIL ACTION NO. 2:19-CV-01292-HB |
| Plaintiffs, | : : | |
| v. | : : | |
| THE GLEN MILLS SCHOOLS and JOHN DOES 1-100, in their official and individual capacities, | : : : : | |
| Defendants. | : : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF
DEFENDANT, THE GLEN MILLS SCHOOLS, TO STRIKE CLASS ACTION
<u>ALLEGATIONS AND DISMISS, IN PART, PLAINTIFFS' COMPLAINT</u>**

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................................... 2

III.  ARGUMENT .......................................................................................................... 4

    A.  There Is No Basis To Strike Plaintiffs' Class Allegations ....................................... 4

        1.  GMS Misstates The Legal Standard For Striking Class Claims ................. 4

        2.  Plaintiffs Plead Facts Sufficient To Show That Class Injunctive Relief Is Plausible Under Rule 23(b)(2) ............................................................... 7

        3.  Plaintiffs' Claims For Injunctive Relief Are Ripe ..................................... 9

        4.  Plaintiffs Allege Facts Sufficient To Show That Class Certification Is Plausible Under Rule 23(b)(3) .............................................................. 10

        5.  Plaintiffs' Proposed Class Is Ascertainable ........................................... 11

    B.  There is No Basis to Dismiss Plaintiffs' Substantive Claims ............................... 14

        1.  Plaintiffs' Constitutional Claims Regarding Excessive Force And Abuse Are Governed By The Fourteenth Amendment........................... 15

        2.  Plaintiffs Adequately Allege Negligent and Intentional Infliction Of Emotional Distress Claims ..................................................................... 18

IV.  CONCLUSION .................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*A.J. by L.B. v. Kierst*,
    56 F.3d 849 (8th Cir. 1995) ........................................................................................ 15

*A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*,
    372 F.3d 572 (3d Cir. 2004)....................................................................................... 14

*Alexander v. Boyd*,
    876 F. Supp. 773 (D.S.C. 1995).................................................................................. 17

*Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds*,
    133 S. Ct. 1184 (2013) ............................................................................................... 11

*Application of Gault*,
    387 U.S. 1 (1967)........................................................................................................ 16

*Armstrong v. Paoli Mem'l Hosp.*,
    430 Pa. Super. 36, 633 A.2d 605 (1993)..................................................................... 18

*Arnold v. City of Philadelphia*,
    151 F. Supp. 3d 568 (E.D. Pa. 2015) ......................................................................... 21

*Baby Neal for & by Kanter v. Casey*,
    43 F.3d 48 (3d Cir. 1994)............................................................................................. 7

*Bell v. Money Res. Corp.*,
    No. CIV.A. 08-639, 2009 WL 382478 (E.D. Pa. Feb. 13, 2009) ................................. 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................... 14

*Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*,
    No. CIV.A. 12-929, 2015 WL 401443 (W.D. Pa. Jan. 28, 2015)............................... 13

*Bell v. PNC Bank, Nat. Ass'n*,
    800 F.3d 360 (7th Cir. 2015) ..................................................................................... 11

*Betts v. New Castle Youth Dev. Ctr.*,
    621 F.3d 249 (3d Cir. 2010)....................................................................................... 16

*Brown v. Cook Cty.*,
    No. 17 C 8085, 2019 WL 3776150 (N.D. Ill. Aug. 12, 2019).................................... 4

*Brown v. Nucor Corp.*,
 785 F.3d 895 (4th Cir. 2015) ...................................................................... 4

*Butler v. Suffolk Cty.*,
 289 F.R.D. 80 (E.D.N.Y. 2013) ................................................................. 11

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*,
 867 F.3d 434 (3d Cir. 2017)....................................................................... 13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs, Inc.*,
 528 U.S. 167 (2000)................................................................................... 10

*Giannone v. Ayne Inst.*,
 290 F. Supp. 2d 553 (E.D. Pa. 2003) ........................................................ 20

*Gonzalez v. Corning,*
 885F.3d 186, 195 (3d Cir. 2018)............................................................... 11

*Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
 284 F.R.D. 238 (E.D. Pa. 2012) ................................................................. 5

*Graham v. Florida*,
 560 U.S. 48 (2010)..................................................................................... 15

*Hartig Drug Co. Inc. v. Senju Pharm. Co.*,
 836 F.3d 261 (3d Cir. 2016)....................................................................... 14

*Hess v. Philadelphia Transp. Co.*,
 358 Pa. 144, 56 A.2d 89 (1948) ................................................................ 18

*In re Hydrogen Peroxide Antitrust Litig.*,
 552 F.3d 305 (3d Cir.2008)......................................................................... 5

*In re L.A.*,
 853 A.2d 388 (Pa. Super. 2004)................................................................. 15

*In re R.A.*,
 761 A.2d 1220 (Pa. Super. 2000)............................................................... 15

*Ingraham v. Wright*,
 430 U.S. 651 (1977)............................................................................. 15, 16

*Jackson v. Johnson*,
 118 F. Supp. 2d 278 (N.D.N.Y. 2000)....................................................... 17

*J.S.X. Through Next Friend D.S.X. v. Foxhoven*,
 330 F.R.D. 197 (S.D. Iowa 2019) ............................................................... 4

*K.M. v. Alabama Dep't of Youth Servs.*,
  360 F. Supp. 2d 1253 (M.D. Ala. 2005) ............................................................. 17

*Kane v. Chester Cty. Dep't of Children, Youth & Families*,
  10 F. Supp. 3d 671 (E.D. Pa. 2014) ...................................................................... 19

*Karsjens v. Jesson*,
  283 F.R.D. 514 (D. Minn. 2012)............................................................................ 4

*Kingsley v. Hendrickson*,
  135 S. Ct. 2466 (2015)............................................................................................ 17

*Korman v. Walking Co.*,
  503 F. Supp. 2d 755 (E.D. Pa. 2007) ................................................................... 5

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
  640 F.3d 72 (3rd Cir. 2011) .................................................................................... 5

*M.D. v. Perry*,
  294 F.R.D. 7 (S.D. Tex. 2013)................................................................................ 4

*Martin v. Ford Motor Co.*,
  765 F. Supp. 2d 673 (E.D. Pa. 2011) ................................................................... 5

*Med. Diagnostic Labs., LLC v. Indep. Blue Cross*,
  No. CV 16-5855, 2017 WL 3776619 (E.D. Pa. Aug. 30, 2017)...................... 15

*Miletic v. Natalucci-Persichetti*,
  No. C-3-89-299, 1992 WL 1258522 (S.D. Ohio Feb. 6, 1992)....................... 18

*Miller v. TJX Companies, Inc.*,
  No. CV 19-252, 2019 WL 1168120 (E.D. Pa. Mar. 12, 2019)....................... 19

*NE Hub Partners, L.P. v. CNG Transmission Corp.*,
  239 F.3d 333 (3d Cir. 2001)................................................................................... 8

*Noye v. Yale Assocs., Inc.*,
  No. 1:15-CV-2253, 2016 WL 6276609 (M.D. Pa. Oct. 27, 2016) ............... 1

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*,
  676 F.3d 829 (9th Cir. 2012) ................................................................................ 9

*P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia*,
  No. 2:11-CV-04027, 2011 WL 5127850 (E.D. Pa. Oct. 31, 2011) ............... 4

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ................................................................................ 7

iv

*Phillips v. Cty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008).................................................................. 14

*Porter v. Clarke*,
    852 F.3d 358 (4th Cir. 2017) ................................................................ 10

*Reaves v. Honorable Peace*,
    No. CIV.A. 3:95CV640, 1996 WL 679396 (E.D. Va. Mar. 21, 1996)................................... 17

*Reinig v. RBS Citizens, N.A.*,
    912 F.3d 115 (3d Cir. 2018)................................................................. 13

*Rice v. Diocese of Altoona-Johnstown*,
    2019 WL 242919 (Pa. Super. June 11, 2019) .......................................... 7

*Richardson v. Verde Energy USA, Inc.*,
    354 F. Supp. 3d 639 (E.D. Pa. 2018) ...................................................... 5

*Romeo v. Youngberg*,
    644 F.2d 147 (3d Cir. 1980).................................................................. 16

*Roper v. Simmons*,
    543 U.S. 551 (2005)............................................................................. 16

*Rosenberg v. Avis Rent A Car Sys., Inc.*,
    No. CIV.A 07-1110, 2007 WL 2213642 (E.D. Pa. July 31, 2007)........................... 6

*Santana v. Collazo*,
    714 F.2d 1172 (1st Cir. 1983)............................................................... 17

*Santiago v. Warminster Twp.*,
    629 F.3d 121 (3d Cir. 2010).................................................................. 14

*Schuchardt v. President of the United States*,
    839 F.3d 336 (3d Cir. 2016).................................................................. 15

*Shelton v. Bledsoe*,
    775 F.3d 554 (3d Cir. 2015).................................................................... 7

*Step-Saver Data Sys., Inc. v. Wyse,
    Tech.*, 912 F.2d 643 (3d Cir. 1990)........................................................ 8

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001).................................................................... 7

*Stovall v. Kallenbach*,
    No. 1683 WDA 2018, 2019 WL 2808297 (Pa. Super. Ct. July 2, 2019) ................................ 19

*Suitum v. Tahoe Regional Planning Agency*,
   520 U.S. 725 (1997) ................................................................................................ 9

*Surrick v. Killion*,
   449 F.3d 520 (3d Cir. 2006) ................................................................................ 8, 9

*Susan B. Anthony List v. Driehaus*,
   134 S. Ct. 2334 (2014) ............................................................................................ 9

*Thompson v. Merck & Co.*,
   No. C.A. 01-1004, 2004 WL 62710 (E.D. Pa. Jan. 6, 2004) .................................. 6

*Toney v. Chester Cty. Hosp.*,
   614 Pa. 98, 36 A.3d 83 (2011) ............................................................................. 19

*Trunzo v. Citi Mortg.*,
   No. 2:11-CV-01124, 2018 WL 741422 (W.D. Pa. Feb. 7, 2018) ...................... 6, 13

*United States v. Bucaro*,
   898 F.2d 368 (3d Cir. 1990) ................................................................................. 15

*U.S. Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980) .............................................................................................. 10

*White v. PNC Fin. Servs. Grp., Inc.*,
   No. CIV.A. 11-7928, 2014 WL 4063344 (E.D. Pa. Aug. 18, 2014) ...................... 7

*Williams v. Jani-King of Philadelphia Inc.*,
   837 F.3d 314 (3d Cir. 2016) ................................................................................. 11

*Wright v. City of Wilmington*,
   No. 13-1966-SLR-SRF, 2016 WL 356023 (D. Del. Jan. 28, 2016) ........................ 6

*Youngberg v. Romeo*,
   457 U.S. 307 (1982) .............................................................................................. 15

## **Rules**

Fed. R. Civ. P. 8 .......................................................................................................... 14

Fed. R. Civ. P. 12 .......................................................................................................... 1

Fed. R. Civ. P. 23 .................................................................................................. *passim*

## **Other Authorities**

Restatement (Second) of Torts, §§ 313, 436A ............................................................ 18

## I.   __PRELIMINARY STATEMENT__

Plaintiffs' Complaint asserts that Defendant The Glen Mills Schools ("GMS") engaged in a decades-long pattern and practice, through its employees, of assaulting, mistreating, and abusing students in its care. The Complaint is confined to a single school and single location and details GMS's practice and culture of using violence and threats of violence to subdue the children and youth placed there by state and local authorities. Plaintiffs support their allegations with citations to comprehensive government reports, independent investigations, reporting by the Philadelphia Inquirer that shined a light on the horrifying pattern of abuse which GMS conspired to keep hidden, and the Pennsylvania Dept. of Human Service's findings of abuse of students by GMS that was so pervasive that the Commonwealth conducted an unusual, emergency removal of all students living at GMS and, ultimately, revoked GMS's licenses to operate. Compl. ¶¶ 42-60.

GMS now moves to strike Plaintiffs' class allegations, asking the Court to effectively deny a motion for class certification that has not yet even been drafted or filed, before any discovery, circumventing the normal procedure for class certification under Rule 23, based solely on GMS's self-serving recitation of information that has not been produced to Plaintiffs or the Court, or cross-examined.[1] If GMS wants to challenge Plaintiffs' class allegations or the merits of the claims, it may do so on a full record at the appropriate stage of the case. At this pleading stage, Plaintiffs' allegations plausibly satisfy the Rule 23(b)(2) and (b)(3) requirements for class certification.

---

[1] GMS seeks to strike the class allegations under FED. R. CIV. P. 12(f), 23(c)(1)(A) and 23(d)(1(D). ECF No. 19 and GMS Brief at 5. GMS, however, makes no argument that a motion to strike is proper under Fed. R. Civ. P. 12(f) (governing motions to strike). This is because nothing in the class allegations is "redundant, immaterial, impertinent, or scandalous." *Id*. "[M]otions to strike are disfavored, and should be denied unless the challenged allegations have no possible relation or logical connection to subject matter of the controversy and may cause some significant form of prejudice." *Noye v. Yale Assocs., Inc.*, No. 1:15-CV-2253, 2016 WL 6276609, at *2 (M.D. Pa. Oct. 27, 2016).

GMS also moves to dismiss Plaintiffs' Count I for failure to state a claim for violation of the Fourth Amendment and Fourteenth Amendment and moves to dismiss Plaintiffs' Counts III and IV for intentional infliction of emotional distress and negligent infliction of emotional distress. ECF No. 19. Plaintiffs hereby withdraw their claims asserted under the Fourth Amendment so that issue is moot. Defendants' other arguments are meritless, as set forth below, and should be denied.

## II.   FACTUAL BACKGROUND

The Glen Mills Schools has operated as a custodial placement for juvenile, adjudicated male youths between the ages of 12-18. Compl. ¶ 24. GMS, however, failed to provide a safe and secure facility for the children committed to its care. Compl. ¶ 43. Its pastoral and private setting hid widespread mistreatment and abuse of the students placed there. Compl. ¶¶ 42-43. GMS had a duty to provide students with a rehabilitative program in a safe and secure environment satisfying Constitutional requirements, the Pennsylvania Juvenile Act, and Pennsylvania common law. Compl. ¶ 27. As a matter of practice, however, GMS supported and actively concealed a known system of widespread, institutionalized violence and child abuse. Compl. ¶¶ 1, 9, 11. This culture of violence secretly existed at GMS for decades. Compl. ¶¶ 43 49, 51-57.

GMS promised to deliver a rehabilitative program based on "positive behavioral intervention supports." Compl. ¶ 25. Instead, GMS cowed its students into submission by intimidation and widespread use of institutionalized violence. The staff, with the knowledge, acquiescence and support of management pursuant to a centralized system, regularly abused children with impunity, knowing that GMS would not discipline them, and that the abuse was sanctioned. Compl. ¶¶ 9. Thus, GMS showed a "reckless disregard and deliberate indifference" to its employees' conduct and lack of protection for Plaintiffs and the students at GMS, Compl. ¶¶ 9, 10, who were harmed as a result of Defendants' conduct. Compl. ¶¶ 1, 9, 14.

2

GMS is located in Pennsylvania, but other states also sent their adjudicated youth to the facility. Compl. ¶¶ 26, 49, 50. At one point, the State of Utah commissioned a report to evaluate the out-of-state residential placements to which it sent court-adjudicated youth. Compl. ¶ 49. The report documented the pervasive use of violence at GMS. Compl. ¶¶ 49-57. Utah children reported "harsh" treatment and unpredictable attacks, including "knockin [students'] brains out." Compl. ¶ 52, 54.

The Children's Rights and Education Law Center also documented physical mistreatment, the staffs' obstructive and aggressive behavior towards DHS personnel and the state police, and the "systematic use of unreasonable force." Compl. ¶¶ 45, 46. Plaintiffs' experiences mirror those reported in the Utah report, the Children's Rights and Education Law Center's report, other filed complaints against GMS,[2] and Pennsylvania's findings (Compl. ¶ 13), as well as public reporting. For example, Plaintiff Billy Miller[3] describes being slammed against walls by staff, and being punched by staff and other students. Compl. ¶¶ 30, 31. Likewise, Plaintiff Charlie Jones describes being beaten up by other students at the staffs' instigation and suffering bruises, welts, and hurt ribs. Compl. ¶ 40.

---

[2] *See Derrick v. Glen Mills Schools*, No. 19-cv-01541 (E.D. Pa.) (alleging similar claims against GMS and also bringing claims for violation of federal education laws); *El-Khashab v. The Glen Mills Schools*, No. 19-cv-2224 (E.D. Pa.) (alleging similar claims). The undersigned counsel has also been contacted by many students alleging the same pattern and practice of abuse, and expect a motion for class certification, following discovery, to be well-supported.

[3] Plaintiffs' use of pseudonyms is appropriate. GMS asserts that "[a]t the appropriate time, Glen Mills intends to move the Court for an Order directing Plaintiffs to amend the Complaint to identify the actual parties asserting claims in this action." GMS Brief at 8, n. 2. Plaintiffs will address the use of the pseudonyms at that time. Presently, GMS is not prejudiced because pursuant to an agreement between the Parties, Plaintiffs' names have been produced.

## III.   ARGUMENT

### A.   There Is No Basis To Strike Plaintiffs' Class Allegations

GMS moves to strike the class allegations asserting that the Class is not ascertainable and

Plaintiffs have not adequately alleged claims under Rule 23(b)(2) or (b)(3). GMS Brief at 7-11. In

essence, GMS asks the Court to cut off *any possibility* that the victims of a centralized practice of

systemic abuse will be able to obtain class-wide injunctive or monetary relief without engaging in

the rigorous analysis required to determine whether and to what extent a class should be certified,

and for what issues. GMS Brief at 2, 5, 9. Plaintiffs are entitled to discovery on the class claims

and GMS should not be able to evade scrutiny of its conduct through this Motion.[4]

#### 1.   GMS Misstates The Legal Standard For Striking Class Claims

Motions to strike class allegations filed before plaintiffs move for class certification are

premature, *see P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia*, No. 2:11-CV-04027, 2011 WL

---

[4] Courts have certified classes with claims similar to Plaintiffs. *See, e.g., J.S.X. Through Next Friend D.S.X. v. Foxhoven*, 330 F.R.D. 197, 205 (S.D. Iowa 2019) (certifying a class of students bringing claims under the Fourteenth Amendment, the Americans with Disabilities Act and the Rehabilitation Act who "have received psychotropic medications or a diagnosis for a mental health disorder specified in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-V") or Fourth Edition ("DSM-IV"), as determined by a mental health professional" where those plaintiffs challenged "systemic failures with the overall mental health care program at the School—failures that have caused not disappointing results, but have created an unconstitutional risk to class members' health and safety."); *M.D. v. Perry*, 294 F.R.D. 7, 47 (S.D. Tex. 2013) (certifying a class of all children now, or in the future who were in licensed foster care placements under Rule 23(b)(2) where plaintiffs alleged that the general conditions of their placements "combine to deny the members of the [class] their constitutional right to personal security and reasonably safe living conditions" under the Fourteenth Amendment); *Karsjens v. Jesson*, 283 F.R.D. 514, 518 (D. Minn. 2012) (certifying a class alleging claims under the Fourteenth Amendment under Rule 23(b)(2) where "Defendants' alleged acts and omissions regarding the Plaintiffs' claims constitute actions generally applicable to the Class."). In addition, classes have been certified by federal courts under Rule 23(b)(2) and/or (b)(3) in the context of civil rights and hostile environment claims based upon a centralized practice or culture. *See, e.g.*, *Brown v. Nucor Corp.*, 785 F.3d 895, 922 (4th Cir. 2015) (instructing the district court to certify a class of black workers who alleged racism at a Nucor plant, finding that Nucor had engaged in a pattern or practice of racial discrimination); *Brown v. Cook Cty.*, No. 17 C 8085, 2019 WL 3776150, at *17 (N.D. Ill. Aug. 12, 2019) (certifying a hostile work environment class alleging § 1983 against the

5127850, at *3 (E.D. Pa. Oct. 31, 2011), and only granted in rare instances where a "complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n. 30 (3rd Cir. 2011) (internal citation omitted). Typically, "[s]triking a pleading 'is a drastic remedy to be used sparingly because of the difficulty of deciding a case without a factual record.'" *Richardson v. Verde Energy USA, Inc.*, 354 F. Supp. 3d 639, 654 (E.D. Pa. 2018) (internal citations omitted).

Courts almost always reject motions to strike at the pleading stage because, "to determine if the requirements of Rule 23 have been satisfied, a district court must conduct a 'rigorous analysis,' [in which it] 'may delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'" *Landsman & Funk PC*, 640 F.3d at 93 (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309, 316 (3d Cir.2008)). The Court cannot perform this "rigorous analysis" in the absence of a factual record. *Id.*; *see also Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238, 245 (E.D. Pa. 2012) ("Discovery and full briefing on the merits of class certification are typically required to conduct this 'rigorous analysis.'"). As another court in this District observed:

> [a] motion to strike class allegations under Rule 23(d)(4) seems, for all practical purposes, identical to an opposition to a motion for class certification. Several district courts have held that Rule 23(d)(4) motions to strike class allegations are premature and that the proper avenue is to oppose the plaintiff's motion for class certification.

*Korman v. Walking Co.*, 503 F. Supp. 2d 755, 762 (E.D. Pa. 2007) (citations omitted); *see also Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 680–81 (E.D. Pa. 2011) (collecting cases within the Third Circuit declining to dismiss class allegations prior to a motion for class certification);

---

Cook County under Rule 23(b)(3) because whether the Cook County Sheriff's Office "actions and deliberate inaction in policymaking caused the hostile work environment" was a common question subject to collective action.")

*Bell v. Money Res. Corp.*, No. CIV.A. 08-639, 2009 WL 382478, at *3 (E.D. Pa. Feb. 13, 2009) (denying a motion to dismiss class allegations because the defendant was using the motion to attack the merits of the class itself, which is improper before a motion for class certification has been filed); *Rosenberg v. Avis Rent A Car Sys., Inc.*, No. CIV.A 07-1110, 2007 WL 2213642, at *4 (E.D. Pa. July 31, 2007) ("Defendant seizes on Rosenberg's complaint as an opportunity to attack the merits of the class itself, but that discussion will be appropriate when Rosenberg files his Motion for Class Certification."). At the pleading stage, a complaint will pass muster where the plaintiff demonstrates that "discovery is likely to produce substantiation of the class allegations." *Trunzo v. Citi Mortg.*, No. 2:11-CV-01124, 2018 WL 741422, at *8 (W.D. Pa. Feb. 7, 2018).

GMS relies principally on cases where there was discovery or where the plaintiff had filed a motion for class certification. GMS Brief at 9-10. In *Wright v. City of Wilmington*, No. 13-1966-SLR-SRF, 2016 WL 356023 (D. Del. Jan. 28, 2016), *report and recommendation adopted,* No. 13-1966-SLR/SRF, 2016 WL 1275591 (D. Del. Mar. 31, 2016), cited by GMS, the court denied class certification in the process of ruling *on a motion for class certification filed by the plaintiffs*. And in *Thompson v. Merck & Co.*, No. C.A. 01-1004, 2004 WL 62710, at *1 (E.D. Pa. Jan. 6, 2004), the court ruled on class certification following discovery and where the plaintiffs did not timely file a motion for class certification. Moreover, *Thompson* involved classes of employees who were "employed in different states, in different divisions, in different facilities and at different levels within the company hierarchy." *Id.* As such, the court ruled that the claims were not susceptible to generalized proof or defenses. *Id.* Here, to the contrary, Plaintiffs' allegations

concern a single school and single location managed by an Executive Director. The cases cited by

GMS do not support striking Plaintiffs' class allegations.[5]

### 2. Plaintiffs Plead Facts Sufficient To Show That Class Injunctive Relief Is Plausible Under Rule 23(b)(2)[6]

Plaintiffs' Complaint more than sufficiently alleges facts that demonstrate that discovery

will lead to evidence that they satisfy the Rule 23 requirements. This is a civil rights suit in which

claims for equitable relief are properly litigated for class-wide relief. Rule 23(b)(2) was largely

crafted to permit cases pursuing injunctive relief on behalf of a group of individuals against a

general course of conduct. *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015); *Parsons v. Ryan*,

754 F.3d 657 (9th Cir. 2014); *Stewart v. Abraham*, 275 F.3d 220, 228 (3d Cir. 2001); *Baby Neal*

*for & by Kanter v. Casey*, 43 F.3d 48, 64 (3d Cir. 1994). Rule 23(b)(2) requires Plaintiffs to show

that "the party opposing the class has acted or refused to act on grounds that apply generally to the

class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

class as a whole." FED. R. CIV. P. 23(b)(2). Plaintiffs have adequately alleged each of these required

---

[5] GMS does not argue that Plaintiffs' claims are time-barred as both Plaintiffs' claims are timely with respect to all causes of action alleged. GMS, however, suggests in a footnote that Plaintiffs' class allegations should be stricken because the class may eventually include members whose claims fall outside the statute of limitations. GMS Brief at 8, n.5. At this stage, this argument is purely speculative and therefore not appropriate for consideration. While Plaintiffs do intend to address, when they move for class certification, how far back the class should extend, any such arguments will be based on a factual record and relevant case law. *See, e.g., White v. PNC Fin. Servs. Grp., Inc.*, No. CIV.A. 11-7928, 2014 WL 4063344, at *7 (E.D. Pa. Aug. 18, 2014) ("whether the claims are actually subject to equitable tolling will require fact discovery."); *see also Rice v. Diocese of Altoona-Johnstown*, 2019 WL 242919 (Pa. Super. June 11, 2019, Reargument Denied August 14, 2019) (holding, in a case brought in 2016 for alleged abuse that occurred in the 1970s and 1980s, that the plaintiff sufficiently pleaded her claim for fraudulent concealment sufficient to bring her claim within the statute of limitations).

[6] The heading for Section III.C of GMS's brief is "Plaintiffs Cannot Satisfy Rule 23**(a)**(2) or (3)" (emphasis added). Plaintiffs assume that GMS is referring to Rule 23(b)(2) and (b)(3). GMS does not challenge Plaintiffs' Rule 23(a) allegations.

elements. Finally, Plaintiffs must also demonstrate that monetary damages do not predominate over injunctive and declaratory relief.

First, as to the request for declaratory relief, Plaintiffs allege that the long-term use of illegal force and abuse will establish a record that will be sufficient to support a class-wide declaratory judgment. Compl. ¶¶ 11-12, 46, 49. Second, there are adverse legal interests regarding the disciplinary punishments and measures used at GMS. There is no "uncertainty" with respect to the nature of these sanctions and punishments as the named Plaintiffs have already been subject to the challenged policies and practices, and there is also a substantial threat that if GMS is successful in reopening, the harms will continue or resume. As the Third Circuit stated in *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 342, n.9 (3d Cir. 2001), it is not necessary for the party seeking review to have suffered a completed harm in order to establish adversity of interest "so long as there is a substantial threat of real harm that remains throughout the course of the litigation." Third, a ruling in the context of the well-pleaded facts would not be an "advisory opinion based on a hypothetical set of facts," *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 649 (3rd Cir. 1990), as past practices are strong evidence of what will occur in the future. *See Surrick v. Killion*, 449 F.3d 520, 528 (3rd Cir. 2006). Fourth, a declaratory judgment and injunction on a class-wide basis -- assuming that Plaintiffs prove the underlying constitutional claims -- will provide relief to the Class as a whole and legal certainty as to the procedures that GMS must follow should it reopen.[7]

---

[7] GMS mischaracterizes Plaintiffs' class allegations under Rule 23(b)(2). GMS Brief at 9. In fact, Plaintiffs do not intend to seek individual, compensatory damages for a class certified pursuant to Rule 23(b)(2). Thus, the Court can disregard GMS's argument that Plaintiffs have failed to establish that money damages are incidental. Any claims for individual compensatory damages will be sought pursuant to Rule 23(b)(3).

### 3.  **Plaintiffs' Claims For Injunctive Relief Are Ripe**

The recent closure of GMS by the Commonwealth of Pennsylvania does not preclude a grant of injunctive relief. GMS Brief at 8. Ripeness is an issue of whether a dispute has matured to a point that warrants a legal ruling on the claim. *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014). For the issue to be ripe, it is not necessary for Plaintiffs to show precisely when their rights will be violated, as long as there is evidence, as here, that the Defendants will, in the foreseeable future, engage in the challenged conduct. *See Susan B. Anthony List*, 573 U.S. 149 (the threat of future improper enforcement is stronger where there have been past enforcement practices); *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725 (1997) (final agency determination, even where plaintiff did not avail itself of alternative remedial measures, provided court with "ripe" issue for resolution under Takings Clause); *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829 (9th Cir. 2012) (action to enjoin enforcement of drug laws that would violate religious beliefs is ripe even without proof of when or where plaintiffs would engage in use of drugs); *Surrick*, 449 F.3d at 528 (case is ripe for adjudication even before agency action is taken where parties have adverse legal interests, facts are sufficiently concrete, and judgment will be useful to parties).

The fact that GMS is currently closed does not render these claims unripe or moot. There is good reason to believe that GMS will reopen during the course of this litigation. As recently as July 2019, Christopher Spriggs, the Acting Director of GMS, announced that he was "reaching out today to provide an update on the efforts we are currently undertaking to restructure and reformulate our programs and service delivery. The Glen Mills Schools programs, living units, staffing, and philosophy will be vastly different moving forward. After the layoff of 250 full time staff, contractors, and part-time employees, The Glen Mills Schools has embarked on a restructuring effort that will include new hiring practices, a restructuring of our residential units,

and a complete program overhaul." "A Message From Our Acting Executive Director," available at http://www.glenmillsschool.org/about/.

GMS asserts that it has the resources, prospective students, and necessary programs and funding to fully staff and operate GMS. *See, e.g.*, *Delaware County Appoints New Leadership During Transition*, The Delaware County Daily Times (reporting that GMS's new President of the Board of Directors confirmed that GMS intended to reopen: "We have customers that still want to do business with us that are hopeful to get their kids back here … We've got states that have been very supportive of us, have stood by us, and we hope to take that and build from it.") (available at https://www.delcotimes.com/news/glen-mills-appoints-new-leadership-team-during-transition/article_62e99940-946e-11e9-b2cf-9b05d9f8341f.html). Discovery will provide more information about GMS's suspension and reopening process, but at this point, GMS intends that its closing is simply a temporary matter.

Finally, to the extent that GMS is arguing that the named Plaintiffs' claims for equitable relief are moot, there is no basis to strike the class action allegations at this stage since the prior practices are fully capable of repetition. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs, Inc.*, 528 U.S. 167 (2000) (prospect of future violations, notwithstanding voluntary current compliance was a disputed factual issue); *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) (released parolee could have standing to represent class members in challenging parole procedures); *Porter v. Clarke*, 852 F.3d 358 (4th Cir. 2017) (change in policies regarding conditions on death row insufficient to moot claim as prisons retain the authority to change policy).

### 4.   Plaintiffs Allege Facts Sufficient To Show That Class Certification Is Plausible Under Rule 23(b)(3)

GMS argues that the Court should strike Plaintiffs Rule 23(b)(3) allegations because damages cannot be computed on a class-wide basis and common issues will not predominate over

individual issues. GMS Brief at 9-11. These arguments are premature, disputed and do not support striking the class allegations because discovery is necessary to assess them.

As the Court is well-aware, there is no conclusive bar to a Rule 23(b)(3) damages class simply because individual class members suffered different injuries in a situation where liability flows from an official policy or widespread practice or custom of the defendant. *Bell v. PNC Bank, Nat. Ass'n,* 800 F.3d 360, 376 (7th Cir. 2015); *Gonzalez v. Corning,* 885F.3d 186, 195 (3d Cir. 2018), *as amended* (Apr. 4, 2018). Plaintiffs have alleged that Class members' injuries arise from a common policy or practice promulgated by GMS management. Compl. ¶¶ 9-11, 58. There is no requirement at this pre-discovery stage that Plaintiffs *prove* that the existence of the alleged policy or practice is an issue that will be resolved in its favor. *See Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds,* 133 S. Ct. 1184, 1191 (2013).

Assuming proof of a centralized policy or practice that caused injuries to Plaintiffs and Class members, individualized damage assessments can be made in separate damages trials or other proceedings. *Id.* at 379–380; *see also Williams v. Jani-King of Philadelphia Inc.*, 837 F.3d 314 (3rd Cir. 2016) (damage claims under Pennsylvania wage payment law). Moreover, courts have an array of "management tools" at their disposal for addressing individualized damages issues, which include bifurcation of liability and damages claims, use of a master or magistrate judge to preside over individual damages proceedings, creation of subclasses on damages, or altering, amending or decertifying the damages class after a finding of liability. *Butler v. Suffolk Cty.*, 289 F.R.D. 80, 102 (E.D.N.Y. 2013).

## 5.   **Plaintiffs' Proposed Class Is Ascertainable**

GMS next argues that the Court should strike the class allegations because Plaintiffs plead a "fail safe" class, meaning a class definition that "involves an ultimate issue of liability, GMS Brief at 8, and that Plaintiffs will not be able to satisfy Rule 23's predominance requirement with

common evidence. GMS Brief at 11. The Third Circuit, however, has made clear that the ascertainability inquiry is narrow. If GMS intends to challenge ascertainability, it must be exacting in its analysis "and not infuse the ascertainability inquiry with other class-certification requirements." *Id.* GMS "confuse[s] ascertainability with other relevant inquiries under Rule 23" by improperly equating ascertainability with predominance and liability. *Byrd* at 165 (3rd Cir. 2015).

The proposed class of persons who have attended GMS and suffered physical abuse or are at risk of suffering physical abuse satisfies the Third Circuit's "relatively simple requirement" for ascertainability. *Id.* at 161. Under Rule 23(b)(3), the "[t]he ascertainability standard requires the plaintiff to show that: (1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Id.* at 163 (citations omitted).

The alleged Class is pleaded with reference to objective criteria. Plaintiffs can identify with discovery all persons who attended GMS during the relevant time period. Potential members can be determined through GMS's business records, such as lists of students enrolled at GMS, contracts with sending jurisdictions, records from juvenile courts, and accounting records. Compl. ¶ 2, 6 and 7. Moreover, Plaintiffs can identify Class members using declarations, internal GMS records, hospital and/or other medical records, and other documents obtained via discovery.

GMS further speculates that the Court will have to engage in mini-trials to determine whether, in fact, each potential class member was physically abused. GMS Brief at 8. To the contrary, there are administratively feasible means, which the Third Circuit has expressly accepted, to identify the Class members without the need for such mini-trials. Plaintiffs "need not, at the class certification stage, demonstrate that a single record, or set of records, conclusively establishes

class membership." *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441 (3rd Cir. 2017). In *City Select*, the Third Circuit made clear that the ascertainability requirement "do[es] not imply '*no* level of inquiry of class members can ever be undertaken'" and held that "[a]ffidavits, in combination with records or other reliable and administratively feasible means, can meet the ascertainability standard." *Id.* (emphasis in original); *see also Trunzo*, 2018 WL 741422, at *8 (refusing to dismiss class allegations where the plaintiff's allegations demonstrated that she would be able to ascertain class records using defendants' records and would be able to identify class members by "sifting through these records to determine which of those individuals meet the class description.").

Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*, No. CIV.A. 12-929, 2015 WL 401443 (W.D. Pa. Jan. 28, 2015), is the only case GMS cites on this point. But the *Bell* decision was issued on January 15, 2015, three months before the Third Circuit's seminal *Byrd* opinion dated April 16, 2015, and its later precedential decision, *City Select*, both of which define and limit the ascertainability requirement. In sum, GMS has not demonstrated that there is no such methodology as permitted by the Third Circuit but rather prematurely focuses on merits issues. *Bell* is also inapposite as it  ultimately found that "no amount of discovery" would demonstrate that a "class [could] be maintained." *Bell* at *2. The Court rejected a class definition that "front-load[ed] the individualized damage determinations which ordinarily would be reserved until later in the proceedings." This is not the case here.

At this early stage, Plaintiffs have met their minimal pleading burden by showing that "the essential elements of the claims brought by a putative class are 'capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Reinig*, 912 F.3d at 127 (citing *Tyson Foods, Inc.*, 136 S. Ct. at 1044). Using common proof, Plaintiffs will show that

GMS engaged in a centralized policy or practice of abuse of its students thereby resolving common predominating questions of fact and law. At the appropriate stage following discovery, Plaintiffs will present a trial plan for the Court's approval regarding damages.

### B.      There is No Basis to Dismiss Plaintiffs' Substantive Claims

GMS asks the Court to dismiss certain of Plaintiffs' constitutional and common law claims pursuant to Rule 12(b)(6). With the exception of Defendant's Fourth Amendment argument, which Plaintiffs concede and will withdraw voluntarily, GMS's challenges are meritless and should be denied. GMS asks the Court to dismiss Plaintiffs' Fourteenth Amendment claim because, it claims, only the Eighth Amendment applies. But Plaintiffs have plausibly alleged their Fourteenth Amendment claim as shown below. In addition, GMS misstates and misapplies the standards governing Plaintiffs' claims for negligent and intentional infliction of emotional distress.

Rule 8 of the Federal Rules of Civil Procedure "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests, and . . . this standard does not require detailed factual allegations." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3rd Cir. 2008) (internal quotations and alterations omitted). All well-pleaded allegations in Plaintiffs' Complaint must be accepted as true, construed in the light most favorable to Plaintiffs, and with all reasonable inferences drawn in Plaintiffs' favor. *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3rd Cir. 2016); *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3rd Cir. 2010).

Simply put, to survive a motion to dismiss, a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard is not akin to a "probability requirement," but "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 556. And "'courts cannot inject evidentiary issues into the plausibility determination.'"

*Med. Diagnostic Labs., LLC v. Indep. Blue Cross*, No. CV 16-5855, 2017 WL 3776619, at *3 (E.D. Pa. Aug. 30, 2017) (citing *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3rd Cir. 2016)).

### 1.   Plaintiffs' Constitutional Claims Regarding Excessive Force And Abuse Are Governed By The Fourteenth Amendment

GMS argues that because Plaintiffs are adjudicated delinquents, they are in state custody, triggering Eighth Amendment, as opposed to Fourteenth Amendment, review. GMS Brief at 13, 15. The Eighth Amendment standard of "deliberate indifference" applies when a person has been formally adjudicated of guilt in accordance with the constitutional guarantees of a criminal prosecution, and therefore is subject to punishment. *Ingraham v. Wright*, 430 U.S. 651, 671 (1977). Under Pennsylvania law, juveniles are not convicted on criminal charges. *United States v. Bucaro*, 898 F.2d 368, 372 (3d Cir. 1990) ("Pennsylvania does treat an adjudication of juvenile delinquency differently than a criminal conviction"). An adjudication of a juvenile proceeding is not a conviction of a crime. 42 Pa. Cons. Stat. A. § 6354; *In re L.A.*, 853 A.2d 388, 393 (Pa. Super. 2004). Where juvenile charges are substantiated, the individual is considered an adjudicated delinquent, not a convict, *id.*, a distinction that reflects the different purposes of the juvenile and adult systems. *In re R.A.*, 761 A.2d 1220, 1224 (Pa. Super. 2000); *see Youngberg v. Romeo*, 457 U.S. 307, 322 (1982) (the Fourteenth Amendment standard applies to individuals who are confined where punishment is not the primary goal).

The Supreme Court has made clear in a variety of contexts that children must be treated differently from adult convicted criminals. *See Ingraham*, 430 U.S. at 669; *Roper v. Simmons*, 543 U.S. 551, 569 (2005) (abolishing the juvenile death penalty because it would be wrong to treat the failings of juveniles equally to those of adults); *Graham v. Florida*, 560 U.S. 48, 69-72 (2010) (holding that life imprisonment for juveniles cannot be justified by the same reasons as they are

for adults). Further, the Court has applied the Fourteenth Amendment to juveniles in circumstances where a different Amendment has applied to adults. *See Application of Gault*, 387 U.S. 1, 41 (1967) (applying the Fourteenth, rather than the Sixth Amendment, to hold that juveniles have a right to counsel).

In *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572 (3rd Cir. 2004), the Third Circuit distinguished a plaintiff located in a detention facility for adjudicated delinquents from a convicted prisoner serving a period of incarceration. *Id.* at 575, 584. In *Romeo v. Youngberg*, 644 F.2d 147 (3rd Cir. 1980), the Third Circuit again held that the Eighth Amendment does not apply to detentions intended for the purposes of non-punitive measures. 644 F.2d at 156 (vacated on other grounds by *Youngberg*, 457 U.S. 307). The Court reasoned that mentally-ill individuals are detained for the purposes of rehabilitation and society's protection rather than for retribution, and therefore the Fourteenth Amendment applies. *Id.* at 158. Indeed, the Supreme Court has associated mental institutions with juvenile institutions. *Ingraham*, 430 U.S. at 669 n. 37.

*Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249 (3rd Cir. 2010), cited by GMS, does not reach a contrary conclusion. GMS Brief at 13-14. There, the plaintiff who had suffered injuries in a pick-up football game at a juvenile facility, claimed that the practices of the defendants amounted to deliberate indifference under both the Eighth and Fourteenth Amendments. The Court addressed the Eighth Amendment deliberate indifference claim and found no constitutional violation as there was no substantial risk that would have been known to the defendants. *Id.* at 257–58. The Court then dismissed the Fourteenth Amendment substantive due process claim of a "state created danger" as the deliberate indifference standards for punishment under the Eighth Amendment and failing to protect under the Fourteenth Amendment were the same. In so doing, the Court invoked

16

the "more-specific-provision" doctrine and found no legal basis for the plaintiff to make both claims as they "challeng[ed] the same conduct." *Id.* at 260–61. By distinct contrast, use of force standards are different under the two amendments, *see Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), and proper application of the "more-specific-provision" requires application of Fourteenth Amendment standards.

Other federal courts have ruled that the Fourteenth Amendment applies to claims made by juveniles who are detained or committed in juvenile proceedings. *See e.g.*, *A.J. by L.B. v. Kierst*, 56 F.3d 849, 854 (8th Cir. 1995) (holding that the Fourteenth Amendment applies to juvenile detainees, and noting that "assessments of juvenile conditions of confinement are necessarily different from those … of adult conditions of confinement"); *Santana v. Collazo*, 714 F.2d 1172, 1179 (1st Cir. 1983) ("[J]uveniles…who have not been convicted of crimes, have a *due process interest* … which entitles them to closer scrutiny of confinement than accorded convicted criminals) (emphasis added); *K.M. v. Alabama Dep't of Youth Servs.*, 360 F. Supp. 2d 1253, 1258–59 (M.D. Ala. 2005) (juvenile delinquent and detainees' rights should be analyzed under the Fourteenth Amendment); *Jackson v. Johnson*, 118 F. Supp. 2d 278, 286 (N.D.N.Y. 2000) (holding that the Fourteenth Amendment applies to adjudicated juvenile delinquents); *Reaves v. Honorable Peace*, No. CIV.A. 3:95CV640, 1996 WL 679396, at *8 (E.D. Va. Mar. 21, 1996), *aff'd sub nom. Reaves v. Peace*, 108 F.3d 1373 (4th Cir. 1997) ("The majority of the federal Courts of Appeals…which have determined the standard to which conditions of juvenile detention are subject have concluded that such detention implicates the liberty interest protectable under the Due Process Clause of the Fourteenth Amendment"); *Alexander v. Boyd*, 876 F. Supp. 773, 796 (D.S.C. 1995) (holding that the conditions of the juvenile detention facility should be analyzed through the Fourteenth Amendment because the detainees were adjudicated as juvenile delinquents, not

convicted criminals); *Miletic v. Natalucci-Persichetti*, No. C-3-89-299, 1992 WL 1258522, at *2 (S.D. Ohio Feb. 6, 1992) ("a juvenile who is committed to a correctional…institution, has a right to treatment under the Fourteenth Amendment").

### 2.   Plaintiffs Adequately Allege Negligent and Intentional Infliction Of Emotional Distress Claims

GMS asserts only one basis to dismiss Plaintiffs' emotional distress claims: Plaintiffs' emotional distress claims are inadequately pleaded because they fail to allege a physical manifestation resulting from emotional distress. But Pennsylvania courts have long recognized that defendant tortfeasors may be held liable for emotional distress damages suffered by a plaintiff "when such [mental] suffering is attendant upon and results from a physical injury[,]" *Hess v. Philadelphia Transp. Co.*, 358 Pa. 144, 56 A.2d 89, 91 (1948), instead creating a physical manifestation requirement to allow recovery in certain instances where no physical harm caused by defendant is alleged. Under GMS's fallacious argument, the exception becomes the rule.

"To state a cause of action for negligent infliction of emotional distress the plaintiff must demonstrate that she is a foreseeable plaintiff and that she suffered a physical injury as a result of the defendant's negligence." *Armstrong v. Paoli Mem'l Hosp.*, 430 Pa. Super. 36, 633 A.2d 605, 609 (1993) (citing Restatement (Second) of Torts, §§ 313, 436A)). To prevent a flood of litigation involving fraudulent or exaggerated emotional distress claims, Pennsylvania courts have required plaintiffs to allege a physical manifestation or injury resulting from the emotional distress in instances where no physical harm by defendant to plaintiff is alleged – not in cases where defendant's negligent conduct resulted in physical injury to the plaintiff. *See Armstrong*, 633 A.2d at 609, 610–611 (explaining that because "the tort of negligent infliction of emotional distress has evolved almost exclusively in the context of those who observe injury to close family members and are as a consequence of the shock emotionally distressed[,]" an allegation of physical

18

manifestation of emotional distress is required for plaintiffs asserting NIED claims under the "zone of danger" or "bystander" theories of liability); *Toney v. Chester Cty. Hosp.*, 614 Pa. 98, 123, 36 A.3d 83, 99 (2011) (plurality decision concluding that, while "NIED claims do not require a physical impact as an element of the tort[,] [a] plaintiff asserting a special relationship NIED cause of action *absent physical injury* . . . must still demonstrate the genuineness of the alleged emotional distress, in part, by proving the element of causation.") (emphasis added). Accordingly, the failure to allege physical manifestation of emotional distress is not a proper basis to dismiss an NIED claim where, as here plaintiffs allege multiple instances of severe physical abuse by defendant's employees in the first place.

Similarly, GMS has failed to cite to any apposite authority for its proposition that physical manifestation of the emotional distress must be alleged to state a claim for the intentional infliction of emotional distress where a plaintiff alleges physical abuse or injury by defendant and defendant's agents and employees as the conduct causing plaintiff's distress. Rather, to state a claim for the intentional infliction of emotional distress, "a plaintiff must allege that the defendant 'by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another.'" *Miller v. TJX Companies, Inc.*, No. CV 19-252, 2019 WL 1168120, at *3 (E.D. Pa. Mar. 12, 2019). GMS only cites two cases involving IIED claims, *Kane v. Chester Cty. Dep't of Children, Youth & Families*, 10 F. Supp. 3d 671, 693 (E.D. Pa. 2014), and *Stovall v. Kallenbach*, No. 1683 WDA 2018, 2019 WL 2808297 (Pa. Super. Ct. July 2, 2019).  In *Kane*, the minor plaintiffs' IIED claims against their foster home, the county, and their employees were based on the defendants' alleged failure to report to the minor plaintiffs' guardian *ad litem* an alleged incident of sexual abuse by minor plaintiffs' foster home cohabitant. In *Stovall,* the plaintiff's IIED claim against his former attorney for alleged legal malpractice merely alleged that he "sought

psychological counseling" for his "physiological injuries" that were proximately caused as the result of "being incarcerated in state prison." Importantly, unlike here, neither *Kane* nor *Stovall* involved any allegations of physical contact by the defendants or their employees as the basis for the emotional distress suffered.

Here, Plaintiffs allege severe physical injuries sustained as a result of GMS's intentional and/or negligent conduct. Plaintiff Billy Miller and Plaintiff Charlie Jones allege that they were subjected to "frequent beatings, slamming against walls, and punching by staff and fellow residents[,]" sustained broken bones and/or other physical injuries, and were severely emotionally distressed due to GMS's conduct. Compl. ¶¶ 30, 35, 37, 40, 90, 94-95. Plaintiffs further allege that GMS engaged in "extreme and outrageous conduct" citing numerous instances where Defendants severely beat Plaintiffs and Class members. Compl. ¶¶ 23-60. Plaintiffs allege that "because of Defendants' conduct, Plaintiffs and those similarly situated have suffered and continue to suffer harm, including emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life, all of which adversely affects their daily activities and the full enjoyment of life." Compl. ¶ 14.

These allegations establish negligent or intentional infliction of emotional distress. *See, e.g., Giannone v. Ayne Inst.*, 290 F. Supp. 2d 553, 557, 569 (E.D. Pa. 2003) (plaintiff minor student adequately pleaded NIED claim where he alleged physical injuries accompanied by emotional distress as a result of defendant wilderness academy employees' negligent conduct, such as pouring water down his throat as punishment causing him to choke, and forcing him to sleep outside in the cold and stand in snow naked and barefoot leading to frostbite); *Miller*, 2019 WL 1168120, at *3 (declining to dismiss plaintiff's IIED claim where he alleged that being thrown against a door while he was lawfully shopping at the defendant's store caused 'shock to his

system,' 'emotional upset and harm,' and 'severe emotional distress.'"); *see also Arnold v. City of Philadelphia*, 151 F. Supp. 3d 568, 580 (E.D. Pa. 2015) (denying defendant police officers' and City of Philadelphia's summary judgment where plaintiff supported IIED claim with expert evidence suggesting that she suffered severe emotional distress when she was raped by police officers). Plaintiffs' claims for NIED and IIED here should likewise not be dismissed.

## IV.    <u>CONCLUSION</u>

Based upon the foregoing reasons, the Court should deny GMS's Motion in its entirety. If the Court is inclined to grant any aspect of the Motion, such an Order should be without prejudice, as Plaintiffs have neither had the opportunity for discovery nor filed a motion for class certification, and GMS has not given any reason that an amendment to the pleadings and/or class definition would be futile.

Dated: August 30, 2019                          Respectfully submitted,


<u>/s Shanon J. Carson</u>
Shanon J. Carson
Sarah R. Schalman-Bergen
Amanda R. Trask
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
scarson@bm.net
sschalman-bergen@bm.net
atrask@bm.net

David Rudovsky
**KAIRYS RUDOVSKY MESSING
FEINBERG & LIN**
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400
drudovsky@krlawphila.com

Joseph G. Sauder
**SAUDER SCHELKOPF LLC**
555 Lancaster Avenue
Berwyn, PA  19312
Tel.:    888.711.9975
jgs@sstriallawyers.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing has been filed on the ECF docket and is available for viewing and download on this 30th day of August, 2019.

s/ Shanon J. Carson
Shanon J. Carson