IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MOTHER MILLER, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE GLEN MILLS SCHOOLS, et al. | : | NO. 19-1292 |

MEMORANDUM

Bartle, J.                                    December  17, 2019

        Plaintiffs Mother Miller, on behalf of Billy Miller as
his parent and natural guardian, and Charlie Jones bring this
action individually and on behalf of all others similarly
situated against defendants The Glen Mills Schools ("Glen
Mills") and John Does 1-100 under 42 U.S.C. § 1983 for
violations of the Fourth, Eighth, and Fourteenth Amendments to
the Constitution of the United States.  They also assert
supplemental state law claims of negligence, intentional
infliction of emotional distress, negligent infliction of
emotional distress, and negligent supervision.  Plaintiffs seek
damages as well as declaratory and injunctive relief.

        Before the court is the motion of Glen Mills to strike
and dismiss plaintiffs' class action allegations under Rules
12(f) and 23(d)(1)(D) of the Federal Rules of Civil Procedure
and to dismiss portions of plaintiffs' complaint for failure to
state a claim for relief under Rule 12(b)(6).

The following facts are alleged in the complaint and are taken as true for present purposes. Glen Mills is a registered non-profit Pennsylvania corporation located in Glen Mills, Pennsylvania. It served as a custodial facility and school for the placement of juvenile court-adjudicated boys, aged twelve to eighteen, and other at-risk boys. It was funded in large part by the Commonwealth of Pennsylvania and other governmental jurisdictions to provide services mandated by state law for children who have been adjudicated as delinquent in juvenile court. Defendants "John Does 1-100" are former managers, administrators, supervisors, teaching staff, medical staff, and others who have been employed or were under the control of Glen Mills.

Plaintiff Billy Miller ("Miller"), through his mother, alleges that in 2016, at the age of sixteen, he was sent to Glen Mills as a result of a court adjudication. During the several months that Miller was at Glen Mills, Miller experienced "frequent beatings, slamming against the walls, and punching by staff and fellow residents." He was pulled out of bed, thrown on the floor, and spat upon. Miller's mother requested and obtained a transfer of Miller from Glen Mills to a different program. When she picked him up at the school, he had a broken nose after being punched by a staff member.

Charlie Jones ("Jones") alleges that in 2018, at the age of seventeen, he was sent to Glen Mills as a result of a probation violation. While at Glen Mills, he "experienced or saw beatings, slamming against the walls, and punching by staff and fellow residents." Jones suffered three broken ribs from an assault by three staff members. Staff members also encouraged Jones to engage in a physical altercation with another resident which resulted in Jones sustaining "large bruises and welts." Jones was denied medical treatment and was told to lie about the source of his injuries.

Plaintiffs bring this action on behalf of themselves as well as "[h]undreds, and possibly thousands of boys [who] have attended [Glen Mills] and been subjected to widespread abuse occurring at the School." Plaintiffs aver that Glen Mills and its staff created a culture of violence and intimidation through the systemic use of excessive force, threats of longer sentences for those who report abuse, and detention beyond commitment dates for those students with injuries that would be noticed upon release from the school. Plaintiffs point to instances of physical abuse documented by the Pennsylvania Department of Human Services ("PA-DHS") and a 2001 report from the Utah Division of Youth Corrections evaluating placements at Glen Mills and documenting physical abuse at the school. In 2018, the Department of Human Services of the City of Philadelphia accepted a "corrective action

-3-

plan" from Glen Mills after counselors attacked a Philadelphia child.  The complaint also states that in 2018, two Glen Mills counselors were arrested and charged by the Pennsylvania State Police with aggravated assault, simple assault, and reckless endangerment.  Plaintiffs assert that all class members were subject to a pattern or practice of similar abuse.

II

We begin with defendants' motion to strike and dismiss plaintiffs' class allegations under Rule 23(c)(1)(A) and (d)(1)(D) of the Federal Rules of Civil Procedure.[1]  See Bell v. Cheswick Generating Station, No. 12-929, 2015 WL 401443, at *1 (W.D. Pa. Jan. 28, 2015); Semenko v. Wendy's Int'l, No. 12-0836, 2013 WL 1568407, at *1 (W.D. Pa. Apr. 12, 2013).  Rule 23(c)(1)(A) provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  Under subsection (d)(1)(D) of that rule, a court may issue orders to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."

---

1.  Defendants also reference Rule 12(f), which provides that the court may strike from any pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  That Rule seems inapplicable here.

Plaintiffs bring this lawsuit as a putative class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure. They seek to certify a class of "[a]ll persons who have attended The Glen Mills Schools and who suffered physical abuse or are at risk of suffering physical abuse."[2] Plaintiffs have reserved the right to amend this class definition or to create subclasses after discovery. Although the complaint identifies one proposed class, plaintiffs explain that they will seek to certify a class for injunctive and declaratory relief under Rule 23(b)(2) as well as a class seeking damages pursuant to Rule 23(b)(3).

A court may grant a motion to dismiss or strike class allegations before discovery only where "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 n.30 (3d Cir. 2011) (citing Rios v. State Farm Fire & Cas. Co., 469 F. Supp. 2d 727, 740 (S.D. Iowa 2007)). However, such cases are the "rare few." See id. To determine if the requirements of Rule 23 have been satisfied, a district court must conduct a "rigorous analysis." Id. at 93 (quoting In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 (3d Cir. 2008)). "In most cases, some level of discovery is essential to such an evaluation." Id. Thus, generally class action allegations are

---

2. The class excludes employees and contractors of Glen Mills.

properly evaluated after the parties have had an opportunity to conduct class discovery and a motion for class certification has been filed.[3]  See, e.g., Goode v. LexisNexis Risk & Info. Analytics Grp., 284 F.R.D. 238, 244 (E.D. Pa. 2012); P.V. ex rel. Valentin v. Sch. Dist. of Phila., No. 11-04027, 2011 WL 5127850, at *3 (E.D. Pa. Oct. 31, 2011); Korman v. Walking Co., 503 F. Supp. 2d 755, 762-63 (E.D. Pa. 2007).

With that standard in mind, we turn to the merits of defendants' motion.  Class certification may only be granted if the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure are satisfied:

> (a) Prerequisites.  One or more members of a class may sue . . . as representative parties on behalf of all members only if
>
>> (1) the class is so numerous that joinder of all members is impracticable;
>>
>> (2) there are questions of law or fact common to the class;

---

3.  The authority cited by defendants is not to the contrary. In Landsman, the Court of Appeals vacated orders of the district court dismissing three class actions before discovery and the filing of motions for class certification on the grounds that the court's class certification analysis had been "conclusory" and "premature" and remanded for further proceedings.  640 F.3d at 93-95.  In Thompson v. Merck & Co., the district court granted a motion to strike class action allegations but only after the parties had conducted discovery and plaintiffs had failed to file a timely motion for class certification. No. 01-1004, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004).  And in Bell, the district court granted a motion to strike class allegations before discovery but granted plaintiffs leave to amend the class definition in their complaint.  2015 WL 401443, at *1-2, 7.

(3) the claims or defenses of the
representative parties are typical of the
claims or defenses of the class; and

(4) the representative parties will
fairly and adequately protect the
interests of the class.

The elements of this four-part test are commonly referred to as

"numerosity," "commonality," "typicality," and

"representativeness."

Defendants first contend that plaintiffs' class

allegations under Rule 23(b)(3) must be stricken because plaintiffs

have not sufficiently alleged an ascertainable or definitive class.

See Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 592–93 (3d Cir.

2012).  The ascertainability inquiry is two-fold, requiring a

plaintiff to show that:  (1) the class is "defined with reference

to objective criteria"; and (2) there is "a reliable and

administratively feasible mechanism for determining whether

putative class members fall within the class definition."  Hayes v.

Wal-Mart Stores, Inc., 725 F.3d 349, 355 (3d Cir. 2013).

Ascertainability is "a relatively simple requirement."  Byrd v.

Aaron's Inc., 784 F.3d 154, 161 (3d Cir. 2015).  However, a

putative class action "will founder if the only proof of class

membership is the say-so of putative class members or if

ascertaining the class requires extensive and individualized

fact-finding."  Hayes, 725 F.3d at 356.

To date, there has been no discovery.  On the current record, the court cannot determine whether a class of boys who attended Glen Mills and who suffered physical abuse is ascertainable as a Rule 23(b)(3) class.  Accordingly, defendants' motion to strike or dismiss on ascertainability grounds is premature.

Defendants also contend that the court should strike or dismiss plaintiffs' allegations regarding their proposed class seeking damages relief under Rule 23(b)(3) because damages cannot be computed on a class-wide basis and common issues will not predominate over individual issues.[4]  Rule 23(b)(3) requires that "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  In re Hydrogen Peroxide, 552 F.3d at 310–11 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997)).

---

4.  Defendants also move to strike plaintiffs' class action allegations on commonality grounds.  The Rule 23(a) commonality requirement is considered incorporated into the "more stringent" Rule 23(b)(3) predominance requirement and therefore we "analyze the two factors together, with particular focus on the predominance requirement."  See Sullivan v. DB Investments, Inc., 667 F.3d 273, 297 (3d Cir. 2011) (internal citations and quotation marks omitted).

Thus, predominance requires the court to make a determination that
"[i]ssues common to the class . . . predominate over individual
issues." In re Prudential Ins. Co. Am. Sales Practice Litig., 148
F.3d 283, 313–14 (3d Cir. 1998). This determination requires a
"rigorous assessment of the available evidence and the method or
methods by which plaintiffs propose to use the evidence to prove"
these elements. In re Hydrogen Peroxide, 552 F.3d at 312. "If
proof of the essential elements of the cause of action requires
individual treatment, then class certification is unsuitable."
Newton, 259 F.3d at 172.

A class seeking monetary relief under Rule 23(b)(3) is
not precluded simply because individual class members suffered
different injuries in a situation where liability flows from an
official policy or widespread practice or custom of the defendant.
As our Court of Appeals has stated, "the focus of the predominance
inquiry is on whether the defendant's conduct was common as to all
of the class members, and whether all of the class members were
harmed by the defendant's conduct." Sullivan v. DB Invs., Inc.,
667 F.3d 273, 298 (3d Cir. 2011). Plaintiffs have alleged that the
class members' injuries arise from common policies or practices
promulgated by defendants' management, including the school's
failure to train, supervise, and discipline its staff, its
indifference to abuse and violence, and its efforts to cover up or
otherwise impede investigation of abuse. Such allegations are

-9-

sufficient at this stage of the action to move forward.  Assuming

questions of law or fact common to the class predominate,

individualized damage assessments can be made in separate damages

trials or other proceedings.  See Neale v. Volvo Cars of N. Am.,

LLC, 794 F.3d 353, 375 & n.10 (3d Cir. 2015).  As stated above, the

predominance inquiry requires a "rigorous assessment of the

available evidence."  In re Hydrogen Peroxide, 552 F.3d at 312.

Without the benefit of at least some discovery, we are unable to

conduct such analysis and any determination regarding predominance

would be premature.

     We turn now to defendants' motion to dismiss and strike

as to plaintiffs' putative class seeking injunctive and declaratory

relief under Rule 23(b)(2).[5]  Plaintiffs ask for "declaratory and

injunctive relief, and a writ of mandamus to compel Defendants to

meet their obligations under [Pennsylvania law] . . . on both a

historical and going-forward basis."  They also seek "to compel

Defendants to make a complete disclosure of all records and

information in their possession, custody or control during the time

period from January 1, 2000 to the present pertaining to the abuse

of children and students at the School."  Plaintiffs further

---

5.  Ascertainability is not a requirement for certification of a
Rule 23(b)(2) class seeking only injunctive and declaratory
relief.  Shelton v. Bledsoe, 775 F.3d 554, 563 (3d Cir. 2015).

include a general request for "appropriate injunctive, declaratory, and other equitable relief."

Under Rule 23(b)(2), plaintiffs may proceed with a class for injunctive and/or declaratory relief if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Defendants assert that plaintiffs lack standing to pursue claims for injunctive relief because plaintiffs' detentions at Glen Mills ended prior to the filing of their complaint and Glen Mills is now closed.[6] See Richardson v. Bledsoe, 829 F.3d 273, 278 (3d Cir. 2016) (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 185 (2000)). To determine whether plaintiffs have standing to seek injunctive relief, we consider whether they can "show that [they are] likely to suffer future injury from the [defendants'] conduct." Id. (citing McNair v. Synapse Grp. Inc., 672 F.3d 213, 223 (3d Cir. 2012)). If standing is lacking, this court does not have subject matter jurisdiction as there is no "[c]ase" or "[c]ontrovers[y]." See U.S. Const. art. III, § 2.

---

6. Defendants also assert that plaintiffs cannot maintain a class under Rule 23(b)(2) because plaintiffs seek monetary damages that are more than incidental to their request for injunctive and declaratory relief. Plaintiffs have clarified that they intend to seek certification of a separate class for any damages claims under Rule 23(b)(3), not (b)(2). Thus, defendants' argument fails.

To the extent that plaintiffs seek injunctive relief to compel defendants to disclose prior student records, that is a matter that can be handled through the normal course of discovery. As for any efforts to compel defendants to report abuse on a "going-forward basis," plaintiffs lack standing to pursue such relief now that Glen Mills is closed as stated in the complaint. Although plaintiffs have asserted that Glen Mills may reopen, we cannot permit claims for injunctive relief to proceed based on speculation. See, e.g., Lujan v. Defs. of Wildlife, 504 U.S. 555, 564 & n.2 (1992). Plaintiffs also lack standing to pursue injunctive relief for past instances of abuse because they cannot show a cognizable risk of future harm. See, e.g., Sec. & Exch. Comm'n v. Gentile, 939 F.3d 549, 556 (3d Cir. 2019); McNair, 672 F.3d at 225-26. The proper remedy for the alleged prior abuse is monetary damages. See id.

In conclusion, defendants' motion to dismiss and strike plaintiffs' class action allegations seeking damages under Rule 23(b)(3) will be denied without prejudice to defendants' right to challenge any future motion for class certification. The motion will be granted as to plaintiffs' class action allegations seeking injunctive and declaratory relief under Rule 23(b)(2) as plaintiffs lack standing.

In Count I of the complaint, plaintiffs allege that defendants violated their rights under 42 U.S.C. § 1983 pursuant to the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution to be free from physical abuse and unreasonable or excessive force and to be protected from harm. Defendants have moved to dismiss this count for failure to state a claim under Rule 12(b)(6) to the extent that it alleges a violation of the Fourth Amendment and the due process clause of the Fourteenth Amendment. For purposes of a motion under Rule 12(b)(6), we accept all well-pleaded facts as true and draw all inferences in the light most favorable to the plaintiff. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008).

The protections of the Fourth Amendment and the Eighth Amendment, while initially applicable only to the federal government, are now applicable to the states since they have been incorporated by the due process clause of the Fourteenth Amendment. See Timbs v. Indiana, 139 S. Ct. 682, 686-87 (2019); Mapp v. Ohio, 367 U.S. 643, 655 (1961). Glen Mills has not disputed that, during the relevant time period, it was a state actor to which § 1983 applies.

Plaintiffs concede that their claim under the Fourth Amendment fails and have agreed to withdraw it. Accordingly, we

will grant as unopposed the motion of defendants to dismiss plaintiffs' Fourth Amendment claim.

In order to maintain a § 1983 claim, "a plaintiff must show that the defendant deprived him of a right or privilege secured by the Constitution or laws of the United States while acting under color of state law." Williams v. Borough of West Chester, 891 F.2d 458, 464 (3d Cir. 1989). Analysis of a § 1983 claim begins by identifying the "exact contours of the underlying right said to have been violated" and then determining "whether the plaintiff has alleged a deprivation of a constitutional right at all." Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)). Under the "more-specific provision rule," any constitutional claim "covered by a specific constitutional provision" must be analyzed under the standard appropriate to that specific provision and not under the more general rubric of substantive due process under the Fourteenth Amendment. Lewis, 523 U.S. at 843-44 (internal citations omitted).

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This Amendment has been interpreted to prohibit conduct that constitutes an "unnecessary and wanton infliction of pain" or that is "repugnant to the conscience of mankind." Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). To state

-14-

a claim for relief, a plaintiff must allege "acts or omissions

sufficiently harmful to evidence deliberate indifference." Id. at

106.  Our Supreme Court has made clear that "[a]n examination of

the history of the Amendment and the decisions of this Court

construing the proscription against cruel and unusual punishment

confirms that it was designed to protect those convicted of

crimes." Ingraham v. Wright, 430 U.S. 651, 664 (1977).  Thus, in

Ingraham, the Court held that the Eighth Amendment did not apply to

the paddling of children as a means of maintaining discipline in

public schools.  Id.

The Supreme Court again examined the interplay between

Eighth and Fourteenth Amendment claims in Whitley v. Albers, 475

U.S. 312 (1986).  There, a prisoner shot in the leg during a prison

riot filed both Eighth Amendment and Fourteenth Amendment

substantive due process claims against prison officials.  475 U.S.

at 314-15.  The Court rejected the prisoner's Fourteenth Amendment

due process claim:

> [T]he Eighth Amendment, which is specifically
> concerned with the unnecessary and wanton
> infliction of pain in penal institutions,
> serves as the primary source of substantive
> protection to convicted prisoners in cases
> such as this one, where the deliberate use of
> force is challenged as excessive and
> unjustified.  It would indeed be surprising
> if, in the context of forceful prison security
> measures, "conduct that shocks the conscience"
> or "afford[s] brutality the cloak of law," and
> so violates the Fourteenth Amendment, were not
> also punishment "inconsistent with

contemporary standards of decency" and
"'repugnant to the conscience of mankind,'" in
violation of the Eighth. . . . Because this
case involves prison inmates rather than
pretrial detainees or persons enjoying
unrestricted liberty we imply nothing as to
the proper answer to that question outside the
prison security context by holding, as we do,
that in these circumstances the Due Process
Clause affords respondent no greater
protection than does the Cruel and Unusual
Punishments Clause.

Id. at 327 (internal citations omitted).

Plaintiffs point out that, under Pennsylvania law, an

adjudication of delinquency is not a criminal conviction. 42 Pa.

Cons. Stat. Ann. § 6354; see also United States v. Bucaro, 898 F.2d

368, 372 (3d Cir. 1990). However, the fact that plaintiffs were

juveniles and were not convicted of any crime is not dispositive of

whether the Eighth Amendment applies. In In re Winship, our

Supreme Court held that juveniles, like adults in the criminal

setting, are constitutionally entitled to have applied the standard

of proof beyond a reasonable doubt even though the juvenile

adjudication is civil in nature. 397 U.S. 358, 365 (1970).

In support of their position that the due process clause

of the Fourteenth Amendment does not apply to juveniles adjudicated

delinquent, defendants cite to Betts v. New Castle Youth

Development Center, 621 F.3d 249, 256 (3d Cir. 2010). In Betts,

the plaintiff, a juvenile who had been adjudicated delinquent,

brought claims against the defendant juvenile detention facility

and several of its staff for permitting him to play tackle football without any safety equipment, which resulted in a spinal cord injury that rendered plaintiff a quadriplegic. 621 F.3d at 252. Plaintiff alleged that defendants were deliberately indifferent to a substantial risk of serious harm to him in violation of his rights under the Eighth Amendment. Id. at 256. Plaintiff also asserted that defendants were deliberately indifferent to his liberty interest in bodily integrity and that allowing him to play tackle football without equipment constituted a state-created danger in violation of his right to substantive due process under the Fourteenth Amendment. Id. at 259.

Our Court of Appeals affirmed the grant of summary judgment against plaintiff on his claim under the due process clause of the Fourteenth Amendment. Id. at 261. The Court reasoned that because the plaintiff's allegations regarding the conditions of his confinement and defendants' alleged failure to ensure his safety "fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment," the "more-specific provision rule foreclose[d] [plaintiff's] substantive due process claims."[7] Id.

_____

7. The Court of Appeals also ultimately affirmed the grant of summary judgment in favor of defendants on plaintiff's Eighth Amendment deliberate indifference claim because plaintiff had failed to raise a genuine dispute of material fact as to whether there was a substantial risk of harm that was known to defendants. Id. at 257-58.

In <u>A.M. ex rel. J.M.K. v. Luzerne County Juvenile</u>
<u>Detention Center</u>, a case cited by plaintiffs, our Court of Appeals
did apply the due process clause of the Fourteenth Amendment to a
juvenile's claim against a detention center for failure to protect
him from harm while at the center.  372 F.3d 572, 575, 579 (3d Cir.
2004).  However, the plaintiff was awaiting final disposition and
placement on the charges against him and had not yet been
adjudicated delinquent.  <u>Id.</u> at 575.  Thus, the plaintiff's claim
was properly analyzed under the due process clause of the
Fourteenth Amendment because he was merely a juvenile detainee.
<u>Id.</u> at 579, 584.

In light of <u>Betts</u>, we agree with defendants that
plaintiffs' claims under § 1983 are cognizable under the Eighth
Amendment rather than the due process clause of the Fourteenth
Amendment.  While plaintiffs have cited authority from outside this
circuit applying the Fourteenth Amendment to § 1983 claims brought
by juveniles adjudicated delinquent, we are bound to follow the
decision of our Court of Appeals directly on point.  <u>See, e.g.</u>,
<u>A.J. by L.B. v. Kierst</u>, 56 F.3d 849, 854 (8th Cir. 1995); <u>Santana</u>
<u>v. Collazo</u>, 714 F.2d 1172, 1179 (1st Cir. 1983).  In so ruling, we
note that there is no dispute that plaintiffs have alleged
sufficient facts to proceed with their § 1983 claims to the extent
they allege a violation of their rights under the Eighth Amendment.

-18-

Accordingly, the motion of defendants to dismiss plaintiffs' claims under 42 U.S.C. § 1983 to the extent such claims are predicated on violation of their rights under the Fourth and Fourteenth Amendment will be granted.

IV

Defendants have also moved to dismiss plaintiffs' claims for negligent infliction of emotional distress and intentional infliction of emotional distress in Counts III and IV of the complaint. Defendants assert that these claims are inadequately pleaded because plaintiffs have failed to allege a physical manifestation of any emotional distress suffered as a result of defendants' conduct.

The tort of negligent infliction of emotional distress under Pennsylvania law has evolved almost exclusively in the context of those who observe physical injury to close family members and as a result suffer emotional distress. See Armstrong v. Paoli Mem'l Hosp., 633 A.2d 605, 609 (Pa. Super. 1993). To prevent a flood of litigation involving fraudulent or exaggerated claims in such "zone of danger" or "bystander" types of claims, Pennsylvania courts have required plaintiffs to allege a physical injury resulting from the emotional distress. See id. (citing Restatement (Second) of Torts §§ 313, 436A). Thus, a plaintiff must allege that: (1) he or she is a foreseeable plaintiff; and (2) that he or she suffered a physical injury as a result of the

-19-

defendant's negligence.  Id.  A plaintiff is foreseeable when
either:  (1) he or she is a close relative of the injured victim
and was a bystander at the scene who closely observed the incident;
or (2) the defendant owes a pre-existing duty of care, either
through contract or fiduciary duty.  Id. at 610, 612, 615.  The
physical injuries accompanying the emotional distress may be
"trivial or minor in character."  Potere v. City of Phila., 112
A.2d 100, 104 (Pa. 1955).  Generally, allegations that the
plaintiff suffered continued nausea or headaches, repeated
hysterical attacks, nightmares, insomnia, depression, shortness of
breath, hyperventilation, or similar effects are sufficient to
satisfy the physical injury requirement.  See Armstrong, 633 A.2d
at 609.

        In Giannone v. Ayne Institute, the district court
considered a claim for negligent infliction of emotional distress
under Pennsylvania law brought on behalf of a disabled minor
enrolled at the defendant school where the minor was forced to
sleep outside, and as a result suffered severe frostbite and other
injuries.  290 F. Supp. 2d 553, 557-78 (E.D. Pa. 2003).  The court
concluded that the plaintiff's allegations that he sustained such
bodily injuries and that those injuries led to "severe emotional
distress" were sufficient to withstand a motion to dismiss.  Id. at
569.

The complaint here alleges that defendants had a contractual and/or fiduciary duty of care to the named plaintiffs, that plaintiffs suffered physical injuries including a broken nose and broken ribs as a result of defendants' abusive conduct, and that this conduct caused emotional distress to plaintiffs. These allegations are sufficient to state a claim for negligent infliction of emotional distress. Plaintiffs do not seek to recover for emotional distress suffered as a result of having observed physical injuries to others but rather seek to recover for emotional distress caused as a result of defendants' allegedly abusive and violent conduct toward them. In such a situation, defendants are incorrect that plaintiffs must also allege separately a physical manifestation resulting from emotional distress. Armstrong, 633 A.2d at 609-11; see also Toney v. Chester Cty. Hosp., 36 A.3d 83, 99 (Pa. 2011). Given the allegations in the complaint, we find plaintiffs have stated a claim for negligent infliction of emotional distress.

To state a claim for intentional infliction of emotional distress, a plaintiff must aver that the defendant engaged in conduct that was clearly outrageous. Papieves v. Lawrence, 263 A.2d 118, 121 (Pa. 1970). Under Pennsylvania law, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized society." <u>Buczek v. First Nat'l Bank</u> <u>of Mifflintown</u>, 531 A.2d 1122, 1125 (Pa. Super. 1987) (internal citation and quotation marks omitted).

In <u>Hoy v. Angelone</u>, the Pennsylvania Supreme Court provided examples of the type of conduct sufficient to permit a claim for intentional infliction of emotional distress. 720 A.2d 745, 754 (Pa. 1998). Those cases included intentionally framing the plaintiff for murder, burying the plaintiff's son in a field after striking him with a car and killing him, and knowingly issuing a press release stating that the plaintiff was suffering from a fatal disease. <u>Id.</u> In <u>Miller v. TJX Cos.</u>, the district court denied a motion to dismiss a claim for intentional infliction of emotional distress where the plaintiff alleged that he was thrown against a door by a security guard while shopping at the defendant's store and that the incident caused "shock to his system," "emotional upset and harm," and "severe emotional distress." No. 19-252, 2019 WL 1168120, at *3 (E.D. Pa. Mar. 12, 2019).

Here, the injured plaintiffs, at the time underage boys, have alleged that defendants intentionally assaulted them in a school setting. The assaults included slamming them to the floor or against the wall, jumping on them, punching them, and spitting in their faces. Plaintiffs have further alleged that such assaults and abuses caused them severe emotional distress. Such allegations

-22-

are sufficient to withstand a motion to dismiss.  See Miller, 2019 WL 1168120, at *3.  Again, defendants' position that plaintiffs must allege a physical manifestation of their emotional distress is unavailing given the fact that plaintiffs have alleged that they were intentionally targeted and directly suffered physical injuries as a result of defendants' allegedly abusive and violent actions.

Accordingly, the motion of defendants to dismiss plaintiffs' claims for negligent infliction of emotional distress and intentional infliction of emotional distress in Counts III and IV of the complaint will be denied.[8]

---

8.  Defendants also assert that plaintiffs' negligent and intentional infliction of emotional distress claims should be dismissed as redundant of plaintiffs' other claims, including their other negligence claims and their § 1983 claims.  Under Rule 8(d)(2) of the Federal Rules of Civil Procedure, plaintiffs may plead alternative theories of relief based on the same set of facts.